IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SERGIO AMAYA-MARTINEZ, | § | |
| | § | |
|     Movant, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-235-O |
| | § | (Criminal No. 4:19-cr-362-O(15)) |
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Respondent. | § | |

**OPINION and ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 and DENYING CERTIFICATE OF APPEALABILITY**

Before the Court are Movant Sergio Amaya-Martinez ("Amaya-Martinez")'s amended motion to vacate under 28 U.S.C. § 2255 and incorporated brief (ECF No. 4) and the government's response (ECF No. 8). Amaya-Martinez separately filed a motion for leave to amend the § 2255 motion with a separate brief (ECF Nos. 9 and 10), to which the government filed a response (ECF No. 14), and Amaya-Martinez then filed a reply (ECF No. 15). After considering the § 2255 motion and separate motion for leave to amend, responses, replies, record, and applicable law, the Court **DENIES** the motion for leave to amend the § 2255 motion and **DENIES** the motion to vacate under § 2255.

**I.    BACKGROUND**

Amaya-Martinez was a member of a drug-trafficking ring associated with the Sinaloa Drug Trafficking Organization. Presentence Report ("PSR") ¶¶ 12, 14, 16, *United States v. Amaya-Martinez*, No.4:19-cr-362-O (15), CR ECF No. 307-1.[1] On several occasions, Amaya-Martinez brokered kilogram-quantity methamphetamine deals between his supplier and a

---

[1]The Court will now refer to docket entries of the underlying criminal case as only "CR ECF No. ___."

1

cooperating source. *Id.* at ¶¶ 21-23, 27. He also sold a kilogram of methamphetamine directly to the cooperating source. *Id.* at ¶ 26.

Amaya-Martinez was charged by information with one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 21 U.S.C. § 846. Felony Information, CR ECF No. 182. He pleaded guilty via a written plea agreement. Plea Agreement, CR ECF No. 244; Factual Resume, CR ECF No. 246. He was ultimately sentenced to 168 months' imprisonment. Judgment, CR ECF No. 511. Amaya-Martinez filed a direct appeal, but the Fifth Circuit affirmed his conviction and sentence on April 16, 2021. *See United States v. Amaya-Martinez*, 844 F. App'x 733, 734 (5th Cir. 2021). Amaya-Martinez's request for certiorari was denied on October 18, 2021. *Amaya-Martinez*, 142 S. Ct. 411 (2021). As such, he had until October 18, 2022 to file a timely motion under § 2255. Thus, the § 2255 motion, initially filed in March 2022, is timely.

## II. GROUNDS FOR RELIEF

In the amended[2] § 2255 motion, Amaya-Martinez appears to argue that his guilty plea is invalid because his counsel ineffectively failed to (1) have the proceedings against him translated; (2) review discovery with him; (3) meet with him more frequently; and (4) adequately predict his sentence. Am. Mot. 7, 29, ECF No. 4. He also claims that his appellate counsel was ineffective. *Id.* 12-13.

## III. APPLICABLE LAW and ANALYSIS

### A. Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of

2

the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

B.     **Law Applicable to Review of Ineffective-Assistance Claims under § 2255.**

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test applies to IAC claims arising from guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable

---

[2]Amaya-Martinez initially filed a typed § 2255 motion. ECF No 1. In response to the Court's directive, he completed a form motion for relief under § 2255 with incorporated supporting brief that the Court refers

professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

---

to herein as an amended § 2255 motion. He also seeks to further amend as analyzed *infra*.

4

### C. Challenge to Whether he Voluntarily and Knowingly Pleaded Guilty (Ground One).

As previously noted, Amaya-Martinez appears to claim that his guilty plea was invalid because it was a result of his trial counsel's failure to (1) have the proceedings against him translated; (2) review discovery with him; (3) meet with him more frequently; and (4) adequately predict his sentence. Am. Mot. 7, 29, ECF No. 4. These conclusory claims fail for two reasons. First, they are belied by the record, including Amaya-Martinez's sworn statements at his rearraignment. Second, Amaya-Martinez cannot demonstrate that he suffered any prejudice.

The record belies any notion that Amaya-Martinez's guilty plea was anything but voluntary and knowing. As to his claim that his lawyer failed to have his proceedings translated, Amaya-Martinez was accompanied by a translator at his rearraignment who translated the proceeding and the plea documents that he signed. Rearraignment Tr. 4-5. 45-52, 56; ECF CR No. 602. Further, Amaya-Martinez testified that he understood the proceedings and that he read and understood his plea papers before signing them. *Id.* at 37. Amaya-Martinez's sworn testimony is entitled to a strong presumption of verity in this collateral proceeding. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). He has done nothing to rebut that presumption here.

Similarly, Amaya-Martinez's claims that his counsel's failure to review discovery with him and visit him more frequently invalidated his guilty plea are also refuted by the record. At rearraignment, Amaya-Martinez affirmed that he was satisfied with his counsel's performance and that he did not have "any complaint whatsoever with anything [counsel] has done or failed to do" during his representation. Tr. 37-38, CR ECF No. 602.

Moreover, Amaya-Martinez fails to show prejudice. He does not explain how reviewing his discovery or further consultation with his counsel would have resulted in him going to trial.

While he generally asserts that "but for [counsel's] ineffective assistance, I would not have pled guilty," (Am. Mot. 7, ECF No. 4), this conclusory claim is insufficient to show ineffective-assistance. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998); *Solis v. United States*, Civ. No. M-12-126, Crim. No. M-08-419-6, No. 2015 WL 13450986 at *4 (S.D. Tex. July 23, 2015) (holding that movant's conclusory allegation that he would not have plead guilty but for his counsel's performance was insufficient to meet his burden under *Strickland*), *rep. and rec. adopted*, 2015 WL 13450987 (S.D. Tex. Sep. 29, 2015).

Finally, Amaya-Martinez's assertion that he pleaded guilty based on his lawyer's promise of a 60-month sentence is also belied by the record. Amaya-Martinez's signed plea agreement states that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose." Plea Agreement 4, CR ECF No. 244. At his rearraignment hearing, Amaya-Martinez assured the Court that he had gone over his plea agreement with his lawyer and understood everything in it. Tr. 37, CR ECF No. 602.

Regarding the range of his potential sentence, Amaya-Martinez testified he understood that he faced a penalty up to 20 years' imprisonment and that he should not rely on any statement or promise by anyone as to what his sentence would be. *Id*. at 14-15, 19-20, 46-47. More specifically, Amaya-Martinez assured the Court that no one had made any promise or assurances to him of any kind to induce him to plead guilty and that he understood that he was facing a sentence of up to 20 years' imprisonment. *Id.* at 46-47, 51-52. Amaya-Martinez's sworn statements—that he understood the Court would impose a sentence up to 20 years' imprisonment and that no one had made him any promises to induce him to plead guilty—directly refute his assertion here that his lawyer promised him that he would receive a five-year sentence in exchange for his guilty plea.

Amaya Martinez's sworn testimony is entitled to a strong presumption of verity in this collateral proceeding. S*ee Blackledge*, 431 U.S. at 73-74. He has done nothing to rebut that presumption. His self-serving claims are not enough to "produce[] independent indicia of the likely merit of [his] allegations." *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (explaining that a petitioner typically meets this standard by providing "one or more affidavits from reliable third parties"). The Court finds that Amaya-Martinez's claim that his counsel misled him into pleading guilty is overwhelmingly belied by the record. *See United States v. Palacios*, 928 F.3d 450, 456-57 (5th Cir. 2019); *see also, e.g., Fulbright v. United State*s, No. 3:19-cv-222-B, Crim. No. 3:14-cr-215-B, No. 3:19-cv-222-B-BK, 2020 WL 5995975, at *3 (N.D. Tex. Sept. 15, 2020) (rejecting the movant's "self-serving, post hoc assertions that he would not have pled guilty but for counsel's then-correct advice about his sentencing exposure" because his claims were "insufficient to contradict his testimony at re-arraignment"), *rep. and rec. adopted*, 2020 WL 5993645 (5th Cir. Oct. 9, 2020).

Amaya-Martinez's claim also fails because he cannot show prejudice. Where, as here, the movant entered a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial." *Hill*, 474 U.S. at 59. Thus, the prejudice "inquiry 'focuses on a defendant's decision making.'" *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (quoting *Lee v. United States*, 137 S. Ct. 1958, 1966-67 (2017)). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967. "Factors relevant to determining whether a defendant would have gone to trial can also include the risks he would have faced at trial, his representations about his desire

to retract his plea, and the district court's admonishments." *Valdez*, 973 F.3d at 403 (internal quotation marks and alteration omitted). Applying these settled principles here, Amaya-Martinez cannot demonstrate that he suffered prejudice.

First, the statements he made at his guilty plea hearing undermine his claim that he pleaded guilty because of his lawyer's promise of a five-year sentence. Amaya-Martinez acknowledged that he was subjecting himself to a possible 20-year sentence by pleading guilty and stated that he understood that any sentencing prediction that he may have received from his lawyer was not a promise and that only the Court would decide what sentence to impose. As such, Amaya-Martinez's in-court statements directly refute any assertion that he would not have pleaded guilty but for his lawyer's promise of a lighter sentence.

Second, the record shows that Amaya-Martinez's decision to plead guilty was likely not based on his counsel's alleged sentencing prediction, but on the strength of the evidence against him. Had Amaya-Martinez proceeded to trial, the government would have demonstrated that he was a member of a major drug-trafficking organization. PSR ¶¶ 12-20, CR ECF No. 307-1. The evidence at trial would have shown that Amaya-Martinez brokered kilogram-quantity methamphetamine deals between his supplier and a cooperating source. *Id.* at ¶¶ 21-22, 27. The government would have also likely introduced evidence that Amaya-Martinez personally sold the cooperating source a kilogram of methamphetamine and offered to supply the source with more. *Id.* at ¶¶ 26, 28-29. In the face of this overwhelming evidence, Amaya-Martinez cannot legitimately show that he would have insisted on a trial had his counsel properly predicted his sentence. *Lee*, 137 S. Ct. at 1966 ("Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.").

### D. Claim of Ineffective Assistance on Appeal (Ground Two).

Amaya-Martinez seems to assert that his appellate counsel was ineffective for relying on a single case to argue that Amaya-Martinez should have received a minor role reduction at sentencing. Am. Mot. 12-13, ECF No. 4. To the extent that Amaya-Martinez is raising an ineffective-assistance claim, it is conclusory and should be denied.

Court's judge counsel's appellate performance under the same two-prong test of *Strickland*. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Thus, Amaya-Martinez must demonstrate that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. *Id.* Amaya-Martinez fails to meet this burden, as he simply asserts that "[b]ecause of counsel's ineffectiveness . . . the appeals court affirmed the district court's decision." Am. Mot. 13, ECF No. 4. Amaya-Martinez does not explain what additional arguments his counsel should have made. And he makes no effort to explain how such arguments would have resulted in a different outcome on appeal. The mere fact that Amaya-Martinez's counsel was unsuccessful on appeal does not, by itself, constitute ineffective-assistance. *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983); *see also Green*, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue") (citation omitted). The Court thus finds that the claim that counsel was ineffective on appeal must be denied.

## IV. MOTION TO FURTHER AMEND § 2255 MOTION

### A. Background

As noted, after the government filed its response, Amaya-Martinez filed a motion for leave to further amend his existing § 2255 motion to add additional claims. Mot. Am. § 2255 Mot., ECF No. 9. In the brief in support of his motion to amend, Amaya-Martinez alleges new

claims of ineffective assistance of counsel, arguing that his counsel ineffectively failed to advise him that he would be deported if he pled guilty, failed to advise him of a possible "safety valve" reduction, failed to object to the drug quantity attributed to him at sentencing, and failed to advocate for an "individualized finding" of the drug quantity attributable to him for sentencing purposes. Am. Brief. 1, ECF No. 10. He also argues that the cumulative effect of his counsel's representation warrants relief under § 2255. *Id.* at 1-2. Because Amaya-Martinez's new claims fail to establish either deficient performance or prejudice, his proposed amended motion would be futile, such that, for the reasons explained below, the Court will deny Amaya-Martinez's motion to further amend his § 2255 motion.

**B.     Standard of Review Applicable to a Motion to Amend.**

A motion for relief under § 2255 may be amended in accordance with FED. R. CIV. P. 15. *United States v. Saenz*, 282 F.3d 354, 355 (5th Cir. 2002). Once a responsive pleading has been served, a petitioner has the right to amend once within 21 days. FED. R. CIV. P. 15(a)(1)(B). In this case, the record reflects that Amaya-Martinez does not have an automatic right to amend under Rule 15(a)(1)(B). Here, the government filed a response on June 24, 2022. Resp., ECF No. 8. Amaya-Martinez's motion to amend was submitted on July 26, 2022, beyond the 21-day automatic amendment period. Mot. Am. § 2255 Mot., ECF No. 9. Once that period has passed, amendment may be permitted only with the government's consent or leave of court. FED. R. CIV. P. 15(a)(2).  While Rule 15(a)(2) provides that a court should freely grant leave to amend when justice so requires, leave "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991).

Significantly here, a request to amend a § 2255 motion may be denied when amendment would be futile. *Id*. (stating that in exercising its discretion, the district court may consider a

variety of factors, including futility of amendment); *see United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (holding that the proposed amendment would have been time-barred and was thus futile); *United States v. Liedtke*, 107 F. App'x 416, 418 (5th Cir. 2004) (holding that because the proposed amendment failed to meet the cause-and-prejudice requirement, it was futile, and the district court did not reversibly err by denying leave to amend). Leave to amend may be denied on the basis of futility if the proposed amendment would not survive summary dismissal. *See Rio Grande Royalty Co. v. Energy Transfer Partners*, 620 F.3d 465, 468 (5th Cir. 2010).

        **C.     Proposed Amended Grounds for Relief are Without Merit.**

             1.     <u>Claim that Counsel Failed to Advise Him of Deportation</u>

Amaya-Martinez claims that his counsel ineffectively failed to advise him that his guilty plea subjected him to deportation. Am. Brief 5-6, ECF No. 10. Amaya-Martinez's in-court statements belie this claim, and he has failed to show prejudice.

"Counsel's failure to advise a noncitizen defendant that his guilty plea carries a risk of removal implicates the right to effective assistance of counsel." *United States v. Rafiq*, No. 20-11168, 2022 WL 2387348, *2 (5th Cir. July 1, 2022) (citing *Padilla v. Kentucky*, 559 U.S. 356, 366-69 (2010)). As such, *Strickland*'s deficient performance and prejudice analysis applies to a movant's claim that his counsel failed to advise him of the deportation consequences of his guilty plea. *Id*. Where, as here, the movant pleaded guilty, he can only show prejudice "by establishing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at *3 (internal quotation marks omitted). Still, "[t]he movant's allegations that he would not have pled guilty must be reasonable." *Id.* "In other words, a defendant must demonstrate that going to trial would have

11

given him a reasonable chance of obtaining a more favorable result." *Id*. (internal quotation marks and alterations omitted).

In assessing prejudice in the context of a movant's claim that his counsel did not advise him of his possible deportation, this Court considers the totality of the circumstances, "including [the movant's] evidence to support his assertion, his likelihood of success at trial, the risks [the movant] would have faced at trial, [the movant's] representations about his desire to retract his plea, [the movant's] connections to the United States, and the district court's admonishments." *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014). Here, Amaya-Martinez cannot show prejudice under the totality of the circumstances. While he may be able to demonstrate that his connections to the United States support a finding that he would not have pleaded guilty had he known that he was going to be deported, this factor is outweighed by several other factors.

First, Amaya-Martinez's only evidence supporting his claim that he would not have pleaded guilty is his unsworn assertion that he "would likely have insisted on going to trial had Counsel only advised him of the deportation consequence of the guilty plea." Am. Brief 6, ECF No. 10. But as noted above, "courts should not upset a plea solely because of . . . assertions from a defendant that his attorney's ineffectiveness is what caused him to plead guilty." *Rafiq*, 2022 WL 2387348 at *3 (internal quotation marks and alteration omitted). Courts should instead "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 167.

Here, the contemporaneous evidence refutes Amaya-Martinez's current assertion that he would not have pleaded guilty had he known that he would be deported. During his rearraignment, Amaya-Martinez confirmed under oath that he understood that his guilty plea could result in his removal from the United States. Tr. 19-20, CR ECF No. 602. Further, Amaya-

12

Martinez's PSR, his signed conditions of release, and directives at sentencing all confirmed that he would be deported after serving his sentence. Ord. Terms of Release 1, CR ECF No. 509; Sentencing Tr. 17, CR ECF No. 570; PSR ¶ 88, CR ECF No. 307-1. While Amaya-Martinez now asserts that he would not have pleaded guilty had he known that he was being deported—a claim that he raises for the first time in his proposed amended motion—he was on notice that he would be deported well before his sentencing, yet he did not even attempt to withdraw his guilty plea. Such contemporaneous evidence weighs against finding prejudice. *See Rafiq*, 2022 WL 2387348 at *3 (holding that the movant's failure to withdraw his guilty plea despite being admonished by the district court and the PSR that he faced deportation was contemporaneous evidence refuting the movant's claim that he would not have pled guilty).

Second, Amaya-Martinez has not alleged—much less demonstrated—that he was likely to succeed at trial. Indeed, as explained earlier, the overwhelming evidence against Amaya-Martinez all but bars him from making this showing. At a trial, the government would have demonstrated that he was a member of a major drug-trafficking organization. PSR ¶¶ 12-20, CR ECF 307-1. The evidence at trial would have shown that Amaya-Martinez brokered kilogram-quantity methamphetamine deals between his supplier and a cooperating source. *Id.* at ¶¶ 21-22, 27. The government also would likely have also introduced evidence that Amaya-Martinez personally sold the cooperating source a kilogram of methamphetamine and offered to supply the source with more. *Id.* at ¶¶ 26, 28-29. Because Amaya-Martinez has not shown any likelihood of succeeding at trial, this factor also weighs against finding prejudice. *See Kayode*, 777 F.3d at 726 (holding that the movant's failure to show that he was likely to succeed at trial weighed against finding prejudice).

13

Finally, the benefits that Amaya-Martinez received by pleading guilty also weigh against finding prejudice. In exchange for his guilty plea, the government agreed not to bring any additional charges against Amaya-Martinez based upon his drug-trafficking conduct. Plea Agreement 3, CR ECF No. 244. Amaya-Martinez's guilty plea also enabled him to receive a three-level reduction to his total offense level, without which he would have faced an increased advisory guidelines range of 235-240 months' imprisonment. PSR ¶¶ 46-47, CR ECF No. 307-1. The fact that Amaya-Martinez would have faced a significantly higher guideline range had he gone to trial weighs against finding prejudice. *See Rafiq*, 2022 WL 2387348 at *4. In sum, the totality of the circumstances outweigh the quality of Amaya-Martinez's connections to the United States and, as such, he cannot show that he was prejudiced from his counsel's purported failure to advise him of the deportation consequences of his guilty plea.

   2.   Claim Counsel Failed to Advise Him of Safety Valve Eligibility

Amaya-Martinez argues that his counsel failed to advise him that he was eligible for a two-level "safety valve" reduction. Am. Brief 6-8, ECF No. 10. This claim fails because the record contradicts it, and he has not alleged prejudice.

While Amaya-Martinez makes an unsworn allegation that he was not told that he was eligible for a safety-valve reduction if he chose to debrief with the government, the record refutes this claim. Amaya-Martinez's PSR, which his lawyer reviewed with him, explicitly states that Amaya-Martinez was not eligible for a sentencing reduction under 18 U.S.C. § 3553(f) because he had not provided truthful information and evidence to the government concerning his drug-trafficking offense. PSR ¶ 40, CR RCF No. 307-1. Amaya-Martinez was thus aware that he could take advantage of the safety-valve reduction by debriefing with the government, but simply chose not to do so. Further, Amaya-Martinez has failed to allege any prejudice. Nowhere

14

in his amended motion does he assert that he would have debriefed with the government in order to receive a safety-valve reduction. As such, his claim fails.

### 3. Claim that Counsel Failed to Challenge the Drug Quantity Calculation

Amaya-Martinez next asserts that his counsel failed to challenge the PSR's drug-quantity calculation. Am. Brief 8-10, ECF No. 10. Amaya-Martinez seems to allege that his counsel should have objected to the drug-quantity calculation because it was supposedly based on drug amounts not reasonably foreseeable to him, but the only drug amount with which he takes issue is the five kilograms of methamphetamine that were assigned to him for a transaction to which he agreed but did not complete. *Id.* at 8-9. In other words, Amaya-Martinez asserts that his counsel should have objected to the PSR's inclusion of this agreed-upon transaction in his drug-quantity calculation. But such an objection would have been without merit and, as such, Amaya-Martinez's counsel was not ineffective for failing to raise the issue.

"An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been differed had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.") Where, as here, an offense involves an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance is used to determine the offense level unless "the defendant establishes that he did not intend to provide or purchase the agreed-upon amount or was not reasonably capable of providing the agreed-upon amount." *See* U.S.S.G. § 2D1.1 comment. (n. 5).

Here, the five kilograms of methamphetamine Amaya-Martinez challenges stems from his agreement to provide the cooperating source with five to ten kilograms of methamphetamine. PSR ¶ 27, CR ECF No. 307-1. The cooperating source asked Amaya-Martinez to provide the source with at least five kilograms of methamphetamine but stated that the source was not willing to pay $6,500 per kilogram. *Id*. Amaya-Martinez informed the cooperating source that he would talk with his source of supply about providing the drugs at a lower rate and later told the cooperating source that he could provide the source with the methamphetamine for $5,500 per kilogram. *Id*. A few days later, Amaya-Martinez asked the cooperating source if the source agreed with the lower price, to which the source said that he would. *Id*. ¶ 28. Amaya-Martinez then told the source that he had methamphetamine ready to distribute. *Id*. ¶ 29. In sum, Amaya-Martinez demonstrated that he intended to provide the cooperating source with at least five kilograms of methamphetamine and that he could provide the source with the drugs. Thus, any objection to the PSR's inclusion of the five kilograms in its drug-quantity calculation would have been without merit, and counsel was not deficient for failing to raise the issue.

Amaya-Martinez's claim also fails for a second, independent reason—the inclusion of the five kilograms of methamphetamine did not affect his base offense level. The PSR explained that, even though Amaya-Martinez was accountable "for attempted or agreed upon methamphetamine transactions," the "inclusion or exclusion" of those transactions did not impact his guidelines calculations. *Id*. ¶ 31. Indeed, whether Amaya-Martinez was accountable for only the 1,969.8 grams of "Ice" that he directly brokered and delivered to the CS—which he seems to admit was properly attributed to him, (Am. Brief 9, ECF No. 10)—or the total 51,396 kilograms of converted drug weight, his base offense level would still be a 36. PSR ¶ 32, CR ECF No. 307-1; s*ee* U.S.S.G. § 2D1.1(c)(2). Because Amaya-Martinez cannot show that he was

prejudiced by the PSR's inclusion of the five kilograms of methamphetamine that he attempted to sell, his claim fails for this additional reason.

### 4. Claim Counsel Should Have Argued for an "Individualized Finding" as to Drug Quantity

Amaya-Martinez also avers that his counsel was ineffective for not objecting to the Court's alleged failure to make an "individualized finding" as to the drug amount attributable to him for sentencing purposes. Am. Brief 10-11, ECF No. 10. But his claim is wholly without merit. Every gram of methamphetamine for which Amaya-Martinez was held accountable resulted from transactions in which he personally participated. PSR ¶¶ 21-32, CR ECF No. 307-1. As such, counsel had no reason to urge the Court to conduct an "individualized finding," and he was not ineffective for failing to pursue a such an argument. *See Kimler*, 167 F.3d at 893.

### 5. Claim that Cumulative Effect of Counsel Error Rendered his Assistance Ineffective

Finally, Amaya-Martinez appears to argue that the cumulative effect of his counsel's errors was so great that he was denied the assistance of counsel. Am. Brief 12-13, ECF No. 10. In order to establish that the cumulative effect of counsel's errors deprived him of a fair trial, Amaya-Martinez must show that his attorney committed at least one error. *See Miller v. Johnson*, 200 F.3d 274, 286 n. 6 (5th Cir. 2000). Based upon this review and analysis, Amaya-Martinez cannot demonstrate that his attorney was in any way deficient. As such, there is "nothing to cumulate" and this additional claim fails. *Id.* (quoting *Yohey v. Collins*, 985 F.3d 222, 229 (5th Cir. 1993)).

For all of these reasons, Amaya-Martinez's motion to amend must be denied as futile.

## V.     CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22 (b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Amaya-Martinez has not made a showing that reasonable jurists would question this Court's rulings and, accordingly, **DENIES** a certificate of appealability for the reasons stated in this order.

## VI.     CONCLUSION

It is **ORDERED** that Amaya-Martinez's motion for leave to amend the § 2255 motion (ECF No. 9) is **DENIED**.

It is further **ORDERED** that Amaya-Martinez's motion and amended motion to vacate under 28 U.S.C. § 2255 (with supporting brief) (ECF Nos. 1 and 4) are **DENIED.** It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **28th day** of **February, 2023**.

                                                                                Reed O'Connor
                                                                   UNITED STATES DISTRICT JUDGE